IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00155-PAB

DANIEL J. BABNIK,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on plaintiff Daniel Babnik's complaint [Docket No. 1], filed on January 20, 2012. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On September 16, 2008, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 19. Plaintiff alleged that he had been disabled since August 1, 2007. *Id*. After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on May 7, 2010. *Id*. On June 3, 2010, the

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

ALJ issued a decision denying plaintiff's claim. R. at 32.

The ALJ found that plaintiff had the following severe impairments: "left ankle pain, status–post alleged injures; bilateral elbow pain, status–post alleged injuries, with evidence of mild deformity of the neck of the left radius; major depression, NOS; methamphetamine and/or marijuana dependence." R. at 22. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 23, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b) except that there would be no climbing of ladders, ropes or scaffolds and occasional climbing of stairs and ramps, kneeling and crouching; he should avoid concentrated exposure to extreme cold and hazards; and he would be limited to semi-skilled work.

R. at 24. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that he can perform." R. at 31.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred in assessing his residual functional capacity. Specifically, he argues that the ALJ (1) improperly discounted Dr. Shauna Grace's opinion regarding plaintiff's ability to stand and walk; (2) improperly discounted Dr. Grace's opinion that plaintiff has manipulative limitations; (3) improperly discounted Dr. Grace's opinion that plaintiff has visual limitations; (4) failed to properly account for plaintiff's mental limitations; and (5) erroneously concluded that plaintiff can perform semi-skilled work in spite of his limited education. Plaintiff's Opening Br. [Docket No. 12].

In assessing a medical opinion, an ALJ must consider the supportability of that opinion, i.e., the extent to which the medical source provides relevant evidence to support her opinion, 20 C.F.R. § 404.1527(c)(3), as well as the extent to which a medical opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4). An ALJ may not, however, "substitut[e] his own medical judgment for that of mental health professionals." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); *see also Pietrunti v. Director, Office of Workers' Compensation Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("an ALJ cannot arbitrarily substitute his own judgment for competent medical evidence"); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1255 (D. Colo. 2009).

Although opinions of examining physicians are generally accorded more weight than those of non-examining physicians, 20 C.F.R. § 404.1527(c)(1), a "non-examining

physician's opinion is an acceptable medical source," which an ALJ is entitled to consider. *Flaherty v. Astrue*, 515 F.3d at 1071. Furthermore, "the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996). Accordingly, the opinion of an examining but non-treating physician may be discounted when that opinion is "based on a single, subjective report" of the claimant and is "not supported by the evidence of record." *Id*. at 1070.

In determining whether a claimant is disabled, an ALJ must consider "the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). If the ALJ finds a "medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. § 404.1523. An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities, including seeing. 20 C.F.R. § 404.1521(a), (b)(2).

### 1. *Standing, Visual, and Manipulative Limitations*

In November 2008, plaintiff submitted a function report stating that he could

"walk eight to ten blocks before sitting." R. at 26. At a psychological evaluation in December 2008, "no physical difficulties with walking or sitting were observed." Id.

On December 27, 2008, Dr. Grace examined plaintiff and concluded that "[t]he number of hours the claimant could be expected to stand or walk in an eight-hour workday would be four hours with frequent breaks, secondary to hardware placement, and prior traumatic injury."[2] R. at 207. Dr. Grace found manipulative limitations in the areas of "[r]eaching overhead, fingering, handling . . . secondary to likely nerve injury from the right elbow crush injury." R. at 208. In addition, Dr. Grace found that plaintiff has "possible visual limitations with concern for cataract development in the right eye and decreased vision in the right eye." Id. Dr. Grace opined that these conditions "would limit the claimant's visual ability as well as ability to work at heights or around dangerous equipment." Id.

Dr. Anthony LoGalbo, a State agency physician, subsequently reviewed plaintiff's medical file and issued an opinion stating that plaintiff is able to walk for approximately six hours in an eight-hour workday. R. at 230. Dr. LoGalbo gave no weight to Dr. Grace's opinion that plaintiff can only stand or walk for four hours at a time and must take frequent breaks, because "[plaintiff] states that he can walk 10 city blocks at time, lives outside, is self sufficient, no assistive device used at [consultative examination] or recommended, 4/5 strength LEs, and only slightly reduced [range of motion]." R. at 235. With respect to plaintiff's manipulative ability, Dr. LoGalbo found that plaintiff is limited in gross manipulation but not in fine manipulation. R. at 232. With respect to

---

[2] After fracturing his ankle in a car accident in 2002, plaintiff "had to have a rod placed in the tibia with hardware in multiple areas." R. at 203.

7

plaintiff's vision, Dr. Logalbo found no limitations, stating that plaintiff's 20/50 vision in his left eye "does not impact the decision for 52 yo with light RFC." *Id*.

The ALJ accorded partial weight to Dr. Grace's opinion. R. at 28. He accepted her opinion that plaintiff is limited in his lifting and carrying ability and that he has postural limitations. R. at 27-28. However, he rejected her opinion that plaintiff can stand or walk for only four hours a day and suffers from manipulative limitations because he found these restrictions "excessive, in light of [plaintiff's] normal gait, the lack of any spinal or hand pathology, his slightly decreased upper extremity strength and good grip strength, and only slightly decreased range of motion in the arms." R. at 29. He concluded that "[a]lthough tenderness and a small effusion was noted at the left ankle and pain at the knee, since [plaintiff] retains a normal gait and reports the ability to walk long distances, he should be able to stand and/or walk for six hours during a normal workday." R. at 30. In addition, the ALJ rejected Dr. Grace's opinion that plaintiff has a possible visual limitation on the ground that "this impairment is not considered severe."[3] R. at 29.

The ALJ also gave partial weight to Dr. LoGalbo's opinion, accepting the exertional and postural limitations but rejecting any limitation involving manipulative skills. R. at 29 ("The additional upper extremity limitations are unsupported by any observations of gross or fine manipulative deficits or significant range of motion loss").

---

[3] At step three, the ALJ concluded that "There are no indications the claimant is unable to avoid normal obstacles or requires an assistive device, and the evidence indicates that he is able to read when he holds items a bit farther from his eyes and was able to drive as recently as June 2009 (Exhs. 2F; 4F). Since the record fails to establish that reduced visual acuity has posed more than minimal vocationally relevant limitations, it is considered nonsevere." R. at 22.

The ALJ's decision indicates that he relied in part on Dr. LoGalbo's reasoning in finding that plaintiff can stand or walk for six hours and in rejecting Dr. Grace's opinion that plaintiff can stand or walk for only four hours. *Compare* R. at 27, 30 ("since he retains a normal gait and reports the ability to walk long distances, he should be able to stand and/or walk for six hours during a normal workday, and sit without restriction") *with* R. at 234 ("he states that he has trouble walking, but then states that due to his high pain threshold he can walk 10 blocks. He uses no assistive devices and none were recommended at the [consultative examination], but alleges use of cane . . . . He lives independently and lives outside. . . . He takes no pain medications. . . . Gait was normal."). The ALJ did not err in discounting Dr. Grace's opinion because she did not have a treating relationship with plaintiff, did not offer relevant evidence to support her finding, and reached a conclusion that was, on the whole, inconsistent with the record, especially insofar as plaintiff reported the ability to walk long distances. *See* SSR 96-6P, 1996 WL 374180 at *2; 20 C.F.R. § 404.1527(c)(3)-(4); *Flaherty v. Astrue*, 515 F.3d at 1070-71. The ALJ was entitled to consider Dr. LoGalbo's opinion and to adopt his reasoning, which was consistent with the record. *See* R. at 235.

However, the ALJ impermissibly relied on his own interpretation of the medical data in declining to credit either Dr. Grace or Dr. LoGalbo's opinions regarding plaintiff's manipulative ability. R. at 29; *see Winfrey v. Chater*, 92 F.3d at 1023. This decision appears to have been based on the absence of hand pathology, plaintiff's good grip strength, and the range of motion in his arms. *Id*. However, Dr. Grace attributed plaintiff's manipulative limitations "to likely nerve injury from the right elbow crush

9

injury." R. at 208. The ALJ did not provide any basis for rejecting this opinion, other than his implicit finding that Dr. Grace's interpretation of the medical data was incorrect.

Finally, the ALJ rejected Dr. Grace's finding that plaintiff might have a visual limitation because the ALJ had already found that plaintiff's visual impairment "is not considered severe." R. at 29. The record contained substantial evidence supporting the ALJ's conclusion. *See Flaherty*, 515 F.3d at 1070 ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Specifically, the ALJ's initial finding of non-severity was based on evidence that plaintiff can still read, that he could drive a car as recently as 2009, and that he does not need an assistive device in order to live on his own. R. at 22. In addition, Dr. LoGalbo did not find that plaintiff's visual impairments posed a vocational restriction. Docket No. 13 at 19. Moreover, Dr. Grace's finding on this point was equivocal. R. at 208 ("[t]here are possible visual limitations with concern for cataract development"). In other words, Dr. Grace's finding of a possible visual limitation was contradicted by substantial evidence in the record upon which the ALJ properly relied.

In sum, the ALJ erred in substituting his own medical judgment for the opinions of plaintiff's physicians indicating that plaintiff has manipulative limitations.

### 2. Mental Limitations

Plaintiff argues that the ALJ improperly excluded specific mental and cognitive limitations from plaintiff's RFC, namely, plaintiff's depression, his limited ability to interact with others, and his educational level. Docket No. 12 at 42-45. Defendant argues that the exclusion of any such limitations was harmless because the VE stated

that the addition of such limitations would not eliminate all jobs in the national or regional economy. Docket No. 13 at 20-21.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to that evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (internal citations omitted). "[H]armless error analysis . . . may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (internal quotation marks omitted)).

### a. Major Depression

Plaintiff argues that the ALJ erred in failing to account for plaintiff's severe depression in assessing plaintiff's RFC. Docket No. 12 at 42.

At step three of his decision, the ALJ found that plaintiff's depression was a severe impairment, meaning that it significantly limits plaintiff's mental ability to do basic work activities. R. at 22; 20 C.F.R. § 404.1521(a). However, in assessing plaintiff's RFC, the ALJ stated that "[r]ecords from his primary care practice fail to document any complaints of mental health problems, which suggest he has not found his alleged depression to be particularly limiting." R. at 28. The ALJ further stated that plaintiff

"has decided to use his resources to obtain marijuana instead of [mental health] treatment." *Id*. The RFC finding does not contain any limitations linked to plaintiff's depression. *See* R. at 24.

Given that a finding of severity indicates that an impairment significantly limits a claimant's mental ability to do basic work activities, 20 C.F.R. § 404.1521(a), it is unclear how an impairment could be both severe and not "particularly limiting." *Compare* R. at 22 *with* R. at 29. Thus, the ALJ's RFC finding with respect to plaintiff's depression is not supported by substantial evidence because it directly conflicts with the ALJ's own findings at step three. *See Borgsmiller v. Astrue*, 2012 WL 4902972 (10th Cir. Oct. 17, 2012) (RFC unsupported by substantial evidence where it contradicts ALJ's own determination regarding claimant's ability to work); *see also Winfrey*, 92 F.3d at 1023-24 (once ALJ deems a medical opinion credible, he cannot arbitrarily exclude aspects of that opinion from the RFC determination).

### b.  Cognitive and Educational Limitations

Plaintiff argues that the ALJ erred in excluding from his RFC any mention of plaintiff's limited ability to interact with other people. Docket No. 12 at 42-45.

On December 17, 2008, Dr. Margaret McKinney conducted a psychiatric consultation with plaintiff. R. at 197. She concluded that

> he should be able to perform simple tasks and a few more complex tasks with which he is familiar. He is able to understand and remember instructions and to maintain concentration and attention for completion of many tasks. He should be able to interact with supervisors and co-worker[s] on a limited basis, but should not be expected to deal with large groups [of] people or the general public.

R. at 200. Dr. McKinney noted that plaintiff was "hesitant in providing information" and

"resistant in giving history" but concluded that "his performance on the mental status exam is thought to be generally valid, although there could have been a lack of effort on some items." R. at 199. Dr. McKinney also found that plaintiff had a Global Assessment of Functioning ("GAF") score of 61.[4] R. at 200.

On December 31, 2008, Dr. Sara Sexton completed a Mental Residual Functional Capacity Assessment of plaintiff. R. at 224-26. She found that he was "[a]ble to do simple tasks" and could "follow simple instructions, sustain ordinary routines, and make simple work related decisions." R. at 226. She found that he "cannot work closely with supervisors or coworkers, but he can accept supervision and relate to coworkers if contact is not frequent or prolonged." She proscribed all contact with the general public. Id. Plaintiff told both Drs. McKinney and Sexton that he was currently using methamphetamine on a regular basis, although he stated at the hearing before the ALJ that he had not taken any illegal drugs other than marijuana since 2005. R. at 27, 29, 50, 198, 226; see also R. at 28 (finding that plaintiff "decided to use his resources to obtain marijuana instead of [mental health] treatment").

In his decision, the ALJ gave little weight to Dr. McKinney's opinions "[b]ecause of the observation by the psychologist regarding the indicators of poor effort and

---

[4] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (citing AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32, 34 (Text Revision 4th ed. 2000)). A score of 61 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

equivocation, as well as the claimant's blatant misstatement regarding his history of illegal drug use." R. at 29.  The ALJ gave little weight to Dr. Sexton's opinion because of "the claimant's clear attempt to minimize his drug history at the time of the hearing" and because "[t]he information provided to the consultative examiner, upon which this assessment was based, was contradictory and predicated upon the claimant's own subjective statements."  R. at 29-30.  The ALJ concluded that, "[s]ince [plaintiff] is not considered fully credible, his statements to the psychologist are given little weight."  R. at 30.

At the hearing, the ALJ's hypothetical question to the VE did not include limitations related to plaintiff's cognitive abilities, except for his GAF score of 61 and his restriction to semi-skilled work.  R. at 52-53.  Plaintiff's attorney subsequently asked the VE how his conclusion that there were jobs available to plaintiff would be altered by incorporating the additional limitations of "no interactions with the general public and only occasional interaction with supervisors and coworkers, as well as reading and writing at the sixth grade level."  R. at 55.  The VE named three jobs in the national and regional economy that an individual with those additional limitations could perform.  R. at 56.  Although the ALJ did not adopt the additional limitations suggested by plaintiff's attorney, he did cite this testimony as an alternative basis for his decision.  R. at 31 ("Although the undersigned rejects these additions to the hypothetical, he notes that even with their inclusion, a significant number of jobs remains within the national and regional economies that the claimant could perform.").

The exclusion of the limitations noted by Drs. McKinney and Sexton was harmless, even if erroneous.  Given the VE's testimony that these restrictions would not

eliminate all jobs, "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross*, 431 F.3d at 733-34. Moreover, the Court will not upset the ALJ's determination regarding plaintiff's credibility because it is affirmatively linked to substantial evidence in the record that plaintiff made false statements at his hearing regarding his substance abuse. *See Adams ex rel. D.J.W.*, 659 F.3d at 1302.

In sum, the ALJ erred in failing to account for his finding that plaintiff suffers from severe depression in assessing plaintiff's RFC.

### c. Educational Level

Plaintiff argues that the ALJ's finding that he is capable of performing semi-skilled work conflicts with the ALJ's finding that he has a sixth grade educational level. Docket No. 12 at 31-35.

With respect to plaintiff's educational level, the ALJ stated that "the claimant's 6th grade academic capacities would limit him to the performance of semi-skilled work." R. at 30. However, a sixth grade education is defined as "marginal," as opposed to "limited," education and qualifies an individual for only unskilled work. 20 C.F.R. § 404.1564(b)(2) ("Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."). As discussed above, plaintiff's attorney included a sixth grade education in his modified hypothetical to the VE, who nonetheless concluded that, even with a marginal education, there are jobs that plaintiff can perform R. at 55-56. Thus, the ALJ's finding

that plaintiff can perform semi-skilled work was harmless error in this instance. *See Fischer-Ross*, 431 F.3d at 733-34. However, on remand, the ALJ should ensure that his conclusions regarding plaintiff's educational level and his skill level are consistent.

### 3. Function-by-Function Finding

Plaintiff argues that the ALJ erred because he failed to set forth plaintiff's RFC on a function-by-function basis. Docket No. 12 at 25-30.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[W]ithout the initial function-by-function assessment . . ., it may not be possible to determine whether the individual is able to do past relevant work . . . because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level." *Id*. at *3.

Here, the ALJ stated that:

> the upper extremity atrophy and deformities at the elbows and right wrist would prevent the claimant from lifting and carrying more than 20 pounds occasionally and 10 pounds frequently, and from using the arms to climb. . . . he should be able to stand and/or walk for six hours during a normal workday, and sit without restriction. . . . the claimant should climb stairs and ramps, kneel and crouch occasionally, while his global discomfort would be worsened by concentrated exposure to extreme cold and hazards. Finally, the claimant's 6th grade academic capacities would limit him to the performance of semi-skilled work.

R. at 30. This language belies plaintiff's assertion that the ALJ failed to make a function-by-function assessment before stating plaintiff's RFC in terms of exertional level. Thus, this argument provides no basis for finding that the ALJ erred.

## III. CONCLUSION

On remand, the ALJ should consider evidence that plaintiff is limited in his ability to perform fine and gross manipulation, or set forth valid reasons that the evidence of these limitations is worthy of little weight. In assessing plaintiff's RFC, the ALJ should consider all impairments determined to be severe.[5]

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.


DATED March 26, 2013.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[5] Given the Court's finding that the ALJ erred in assessing plaintiff's RFC, it need not consider the additional argument that the Appeals Council erred in affirming the ALJ's decision in spite of plaintiff's age at the time of the appeal. Docket No. 12 at 50-52.